**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JAMES EDWARDS, on his own behalf
and on behalf of all others similarly situated,

        Plaintiff,

vs.                                                    No.  CV 99-1476 SC/DJS

MICROSOFT CORPORATION, a corporation
with its principal executive offices at One
Microsoft Way, Redmond, Washington 98052-6399,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff James Edwards' Initial Memorandum in Support of Plaintiff's Request for Payment of Attorneys' Fees and Costs, filed April 13, 2000 [Doc. No. 39], and Plaintiff's Itemized Accounting and Declaration in Support of Attorney Fees for David Cleavinger, Esq., filed April 12, 2000 [Doc. No. 36].[1]  Both the initial memorandum and the itemized accounting were filed in response to the Court's Memorandum Opinion and Order, filed March 27, 2000 [Doc.

---

[1] David Cleavinger and Joseph Arshawsky are co-counsel for Plaintiff James Edwards (Plaintiff).  In addition to Plaintiff's Supporting Memorandum for Attorneys' Fees and Costs filed on April 13, 2000, Joseph Arshawsky and William M. Audet, Esq. each filed supporting affidavits on April 13.  Defendant filed its Response in Opposition to Plaintiff's Memorandum in Support of Plaintiff's Request for Payment of Attorneys' Fees and Costs on April 28, 2000.  Attached as an exhibit to Defendant's response is an affidavit by Defendant co-counsel Leslie McCarthy Apodaca.  Plaintiff filed his Reply Memorandum on May 5, 2000.  A Supplemental Affidavit by Plaintiff's co-counsel Joseph Arshawsky also was filed on May 5, 2000.

No. 34], requesting evidentiary support for requested attorneys' fees and costs. The Court, having read the motions, memoranda, itemized accounting, and affidavits, and being apprised of the applicable law, concludes that Plaintiff's fee motion is partially well-taken. The Court further concludes that Plaintiff's itemized accounting and fee request is not well-taken.

## I.   BACKGROUND

Plaintiff filed his Class Action Complaint on December 6, 1999, in the First Judicial District Court of the State of New Mexico. Plaintiff filed a First Amended Class Action Complaint on December 8, 1999, altering the name of the plaintiff to James Edwards. (At the time, other related lawsuits were facing Defendant in other jurisdictions.) On December 20, 1999, Defendant filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441(a). On December 21, 1999, Defendant filed a Motion to Stay All Proceedings Until the MDL Panel Rules on the Motions to Transfer This and Other Actions Pursuant to 28 U.S.C. § 1407. Plaintiff filed a Motion to Remand to State Court and for Payment of Attorneys' Fees and Costs on February 15, 2000. On March 27, 2000, I denied Defendant's motion to stay and granted Plaintiff's motion to remand, concluding that Defendant had improvidently removed the action and remanding the case to state court pursuant to 28 U.S.C. § 1447(c). Pursuant to § 1447(c), I also awarded Plaintiff his just costs and actual expenses, including attorneys' fees, incurred as a result of Defendant's improvident removal of the action. However, I concluded that Plaintiff's request for attorneys' fees and costs in the amount of $25,300 was facially excessive and

the supporting affidavit submitted by Plaintiff's co-counsel Joseph Arshawsky was insufficient. Consequently, I requested that Plaintiff submit evidence of the just and actual nature of the requested fees and costs and allowed Defendant to respond to the submitted proof. Plaintiff now seeks fees and costs in excess of $50,000.

## II. DISCUSSION

Plaintiff seeks fees, costs, and New Mexico gross receipts tax in the amount of $57,742.92.[2] Of that total amount and excluding gross receipts tax, $3,936.00 is in fees for co-counsel David Cleavinger and $49,288.75 is in fees for co-counsel Joseph Arshawsky and his legal assistant. Defendant challenges Plaintiff's fee request on the grounds that it is based on an unreasonable hourly rate, reflects time spent on matters other than Plaintiff's remand motion, and lacks supporting documentation. Defendant specifically contends that Mr. Arshawsky's time records are too vague to support a fee award, Mr. Cleavinger's time records duplicate Mr. Arshawsky's, and the hourly rates of Mr. Arshawsky and his paralegal are unreasonable. Defendant does not challenge Plaintiff's costs request.[3]

"The most useful starting point for determining the amount of a reasonable fee [for

---

[2] I have not considered any fee or cost of Mr. Arshawsky or his legal assistant billed after April 13, 2000, as Mr. Arshawsky stated in his reply that he was willing to waive any fee or cost award over that requested in his initial motion.

[3] Mr. Arshawsky requests $1593.35 in costs and $34.47 in gross receipts tax on that amount, for a total of $1627.82. I note that the gross receipts tax rate applied by Mr. Arshawsky to his requested costs amount is lower than that applied by him to his requested fee amount (2.16% versus 5.37%). Because Defendant did not contest the costs request the requested $1627.82 will be awarded in full.

an attorney or a legal assistant] is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" (the lodestar amount). Ellis v. University of Kansas Med. Ctr., 163 F.3d 1186, 1202 (10th Cir. 1998) (internal quotations omitted); see Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998). The burden of proof is on the fee applicant. See Ellis, 163 F.3d at 1202.

## A. Allowable Hours

Allowable hours are those charges for specific tasks that are properly chargeable and reasonably expended. See Case, 157 F.3d at 1250. Not all hours expended in litigation are usually billed to the client – rather attorneys exercise "billing judgment." See Ellis, 173 F.3d 1202; Case, 157 F.3d at 1250. The same must be done with a fee application. See Ramos v. Lamm, 713 F.2d 546, 553-54 (10th Cir. 1983). The fee applicant "should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . ." Ellis, 163 F.3d at 1202 (internal quotations omitted). The Court also has an obligation to exclude from the lodestar calculation hours not "reasonably expended." See id.; see also Carter v. Sedgwick County, Kansas, 36 F.3d 952, 956 (10th Cir. 1994) (court may exclude hours that were unnecessary, irrelevant, or duplicative). Furthermore, the Court "is justified in reducing the reasonable number of hours if the attorney's time records are sloppy and imprecise and fail to document adequately how he or she utilized large blocks of time." Case, 157 F.3d at 1250 (internal quotations omitted); see Robinson v. City of Edmond, 160 F.3d 1275, 1281, 1284-85 (10th Cir. 1998).

1. <u>Mr. Arshawsky</u>

I first note that my total of Mr. Arshawsky's hours (up to and including April 13, 2000) is 144.75, a difference of 1.50 hours from Mr. Arshawsky's stated total of 146.25.

Mr. Arshawsky's time entries are vague and condensed, providing little detail and often lumping together multiple tasks ("block-billing").  For example, on December 20, 1999, Mr. Arshawsky billed 4.25 hours for "[t]elephone calls with R. Stone and B. McCorkle; prepare memo."  On December 28, 1999, he billed 6.25 hours for "[t]elephone call with J. Daniels; research; telephone call with [national] plaintiffs' counsel."  The nature or purpose of the research, memorandum, or telephone conversations is not identified nor is it clear how much time was spent on each activity.  On December 29, 1999, Mr. Arshawsky billed 5.75 hours for "[r]eview[ing] correspondence; research; telephone call with [national] plaintiffs' counsel."  Again, no further explanatory detail is provided.

The "analysis of time entries" section in Plaintiff's initial memorandum provides some description of the time Mr. Arshawsky spent on remand-related activity, but not a great deal.  For example, Mr. Arshawsky states that the entry for December 20 concerned the telephone call to him from Defendant's co-counsel Mr. McCorkle, informing that Defendant had removed the case and inquiring whether Plaintiff would oppose or agree to Defendant's intended motion for stay.  There is no explanation of the memorandum prepared or of the other telephone conversation or of how these three activities totaled

4.25 hours.[4]  As to the entries for December 28 and 29, Mr. Arshawsky explains that the hours billed on these two dates related to Defendant's request and Plaintiff's agreement for an extension of time to respond or answer until January 5.  There is no explanation of why such a decision required research or 12 hours of Mr. Arshawsky's time.

In addition, Mr. Arshawsky has failed to exercise billing judgment or billed excessive hours for certain tasks.  For example, Mr. Arshawsky billed a plethora of hours for preparing correspondence, for reviewing pleadings, motions, correspondence, and articles, and for researching and conversing telephonically with national plaintiffs' counsel.  Mr. Arshawsky billed approximately 53.50 hours in relation to his preparation of Plaintiff's remand motion and reply.  This calculation does not include the time spent by Mr. Arshawsky in relation to Defendant's removal, Defendant's motion to stay or other MDL Panel action, Defendant's (unfiled) motion for an extension of time to respond to the complaint, or the Defendant-initiated letter-writing campaign to the Court concerning the motion to stay and the motion to remand.  The remand issue was complicated by Defendant's motion to stay and other MDL Panel activity.  However, in the end, the issue boiled down to a circuit-split, with the Tenth Circuit law supporting Plaintiff's position.  Even allowing for the complexity of the remand issues engendered by the motion to stay and MDL Panel issues, 53.50 hours is an unreasonable expenditure

---

[4] According to Defendant, its co-counsel Mr. McCorkle recorded a total of 0.40 hours for two telephone conversations with Mr. Arshawsky (0.20 hours each) on December 20.  This leaves a balance of 3.85 hours for Mr. Arshawsky's telephone conversation with R. Stone and preparation of a memorandum.

6

of time for preparation of the remand motion and reply given Mr. Arshawsky's extensive experience in litigation of this type and the clarity of the Tenth Circuit law. The excessiveness or poor judgment of Mr. Arshawsky's billing is exemplified further by the 19.25 hours in fees he billed for researching and preparing his fee motion and affidavit(s) (not including the 8.50 hours he spent in relation to his reply and supplemental affidavit).

Moreover, Mr. Arshawsky billed for tasks not required to be performed by him at an attorney fee rate. An example is Mr. Arshawsky's billing of 4.75 hours on March 27 for reviewing the docket, a telephone call to obtain the Court's opinion in this case, traveling to Santa Fe to pick-up the Court's decision, a telephone call to co-counsel, and reviewing the opinion. Reviewing the docket and calling to obtain the Court's opinion are quick tasks that a non-attorney staff member could have performed. Mr. Arshawsky explains that he had to travel to Santa Fe to obtain the Court's opinion because a messenger was unsuccessful in doing so. However, this is not a task that should be performed by an attorney at attorney rates. The opinion could have been faxed to Mr. Arshawsky by the Clerk's Office (with the faxing fee billed) or Mr. Arshawsky could have billed this activity in an amount equivalent to what a messenger would have charged to pick up the opinion.

Therefore, because Mr. Arshawsky's time entries are imprecise, with many in "block billing" format and lacking any explanatory detail, and at times unreasonably expended or devoid of billing judgment, I will reduce the number of hours requested for Mr. Arshawsky by 50 percent.

2.  Ms. Pierce

Ms. Pierce is Mr. Arshawsky's legal assistant or paralegal.  Plaintiff requests compensation for 18.50 hours of Ms. Pierce's time. (The requested hours were accurately totaled.)  Many of Ms. Pierce's time entries suffer from the same defect as Mr. Arshawsky's – lack of detail or explanation of purpose, "block billing" format, excessive time, and/or lack of billing judgment.  Therefore, I will reduce her hours by 50 percent.

3.  Mr. Cleavinger

I note first that my total of Mr. Cleavinger's hours is 22.8, not 32.8 hours as stated by Mr. Cleavinger.  Mr. Cleavinger's time entries are sufficient in terms of detail, etc.  However, Mr. Cleavinger's time appears to be duplicative of Mr. Arshawsky's.  Cf. Case, 157 F.3d at 1252 ("If an attorney is consulting on a case, the assistance provided must be actually necessary or essential to proper representation rather than merely comforting or helpful.").  Mr. Cleavinger's time entries "do not disclose any assistance . . . which was actually necessary to [Plaintiff's] case." Id. (internal quotations omitted).  There are no indications that Mr. Cleavinger assisted with the decision whether to file papers with the MDL Panel or assisted with the drafting of any of the stay, extension of time, or remand pleadings.  Rather, he appears only to have reviewed materials or pleadings.  Therefore, because Plaintiff and his co-counsel have failed to establish that Mr. Cleavinger's work was "reasonably necessary" to Plaintiff's case, none of Mr. Cleavinger's time is allowable.  Any compensation he seeks for the time he expended must be sought from Mr. Arshawsky or Plaintiff.

**B.  Hourly Rate**

The next step after determining the number of hours reasonably expended is to determine a reasonable hourly rate.  The attorney's billing rate, while relevant, is not conclusive.  See Ellis, 163 F.3d at 1203.  What is determinative is the reasonableness of the rate, as defined by market rates in the relevant community.  See id.  The requested rate must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Id. (internal quotations omitted).  The same considerations apply to the determination of reasonable billing rates for legal assistants or paralegals.  See Case, 157 F.3d at 1249.

1.   Mr. Arshawsky

Mr. Arshawsky's billing rate in this case is $325 per hour.  While he admits that this rate is higher than that charged by most New Mexico attorneys, he contends that the rate is reasonable because of (1) the national nature of his complex, class action litigation practice; (2) the rates for similar services in major legal markets; (3) the rate charged for his services by a former California employer in 1994; (4) the rates he has received in other matters; (5) the rigorous efforts by Defendant's eight counsel (including six attorneys of counsel); and (6) the alleged contingent nature of Plaintiff's fees.

Mr. Arshawsky's first three contentions (as elaborated on by Mr. Arshawsky) that it would be unfair to weigh his rate against other New Mexico attorneys, given the national nature of his practice and that he has only a few cases pending in New Mexico; that his rates are in line with rates in major legal markets outside of New Mexico; and

that his current billing rate is consistent with his previous employer's billing rate for him in 1994 in California are rejected as contrary to controlling authority.  Reasonableness of rates are based on a "relevant community" standard.  The relevant community is New Mexico – not the entire United States or major metropolitan areas outside of New Mexico, such as Denver, Los Angeles, or New York City.  Consequently, Mr. Arshawsky's rate must be compared with the rate of other similarly situated New Mexico attorneys.

Mr. Arshawsky's fourth argument that his rate is per se reasonable because it is his customary rate for all class action litigation and because in 1999 he was awarded fees at a rate of $300 per hour is also without merit.  An attorney's billing rate is relevant to determining the rate's reasonableness – but not decisive.  The 1999 award of fees for Mr. Arshawsky at a rate of $300 per hour was by a federal district court sitting in New Jersey and thus provides no evidence that Mr. Arshawsky's current billing rate is reasonable in regards to the New Mexico market.

Mr. Arshawsky's final two contentions concern fee enhancements for the contingent and difficult nature of the case (as the latter is demonstrated by the number of, caliber of, and level of effort by Defendant's attorneys).  Although Defendant failed to respond to these contentions, I conclude that neither contention has merit, as explained below.

Mr. Arshawsky cites to two cases to support his contention that he should receive a contingent fee enhancement, neither of which are persuasive or of precedential value.

10

The first is a New Jersey case which, after a detailed analysis of Supreme Court caselaw, concluded that under New Jersey fee-shifting statutes a court may enhance the lodestar fee in cases in which the prevailing party's attorney's fee arrangement was predominantly contingent on a successful result.  See Rendine v. Pantzer, 661 A.2d 1202, 1224, 1228 (N.J. Sup. Ct. 1995).  Grounded in state law, this case is unavailing.

The second case, which is cited only in the reply, states that in deciding the fee issue the court was guided by the 12 factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).  See Central Cab Co., Inc. v. Cline, 972 F.Supp. 370, 373 & n.4 (S.D. W.Va. 1997).  The continued viability of the Johnson list is unclear.  Many of the factors listed in Johnson are accounted for in the lodestar calculation.  See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564-65 (1986) (Delaware Valley I) (citing Blum v. Stenson, 465 U.S. 886, 898-901 (1984)); see also Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1201 (10th Cir. 1986) ("The many factors for evaluating legal representation set forth in [Johnson], and elsewhere, 'usually are subsumed within the initial [lodestar] calculation. . . .'" (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 n.9 (1983))).  Cf. In re Meronk, 249 B.R. 208, 213 (B.A.P. 9th Cir. 2000) (Defendant "invokes the obsolete laundry list from [Johnson]. The items on that laundry list, however, are now subsumed within more refined analyses." (citation omitted)); Gray v. New York Life Ins. Co., 906 F.Supp. 628, 637 (N.D. Ala. 1995) (Johnson "is tattered and torn" and "has been virtually eliminated" by the lodestar model.).  Furthermore, although "[w]hether the fee is fixed or contingent" is

11

a Johnson factor, Johnson, 488 F.2d at 718, fee enhancements based on the contingency no longer may be allowed in federal fee-shifting cases. See City of Burlington v. Dague, 505 U.S. 557, 567 (1992) (contingency fee enhancement not permitted under fee-shifting provisions of Solid Waste Disposal Act and Clean Water Act; adopting Justice White's opinion in Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 715-727 (1987) (Delaware Valley II)); see also 19 Solid Waste Dep't Mechanics v. City of Albuquerque, No. 99-2172, 2000 WL 1133131 at *2 (10th Cir. Aug. 10, 2000) (unpublished disposition) (in civil rights case, in which fees were requested under 42 U.S.C. § 1988, Tenth Circuit concluded that "enhancements for contingency are not permitted," citing Dague); Rendine, 661 A.2d at 1219, 1223-24 (noting that Dague rationale applies to all federal fee-shifting cases). Finally, even if still allowable, the Tenth Circuit has stated that "an enhancement for a contingency must be viewed with caution and . . . is appropriate only in 'exceptional cases.'" Homeward Bound, Inc. v. Hissom Memorial Ctr., 963 F.2d 1352, 1360 (10th Cir.1992) (citation omitted). The Tenth Circuit has formulated a strict two-pronged test that must be satisfied before contingent fee enhancements may be awarded. See id.

    I will deny Mr. Arshawsky's request for a fee enhancement based on the alleged contingent nature of the case. First, I am not convinced that such enhancements are allowed in cases such as this after Dague. Second, even assuming the continued viability of contingent fee enhancements in statutory fee-shifting cases, Plaintiff has not satisfied Homeward Bound's two-pronged test for contingent fee enhancements. Moreover, the

12

nature of Mr. Arshawsky's contingent fee arrangement with Plaintiff is ambiguous. <u>Compare</u> Pl.'s Initial Mem. at 7 (Arshawsky is not paid on a monthly basis by Plaintiff, and his rates, thus, should reflect the risk he will not get paid.) <u>with</u> Aff. of Joseph Arshawsky at 2, ¶ 3 ("My firm's compensation for the services it has rendered in this action is wholly contingent.  Any fees and reimbursements of expenses will be limited to such amounts as may be awarded by the Court.") <u>with</u> Pl.'s Reply Mem. at 4 ("While [P]laintiff's counsel is not working on a 'contingent fee' in the same sense as a personal injury matter, [P]laintiff's counsel is nevertheless at a greater risk than the Rodey law firm of not getting paid unless or until [P]laintiff prevails.").

As for the "difficult nature of the case" enhancement requested, Mr. Arshawsky has provided no authority or evidence to support his position that such an enhancement is warranted.   Fee enhancements for the tenaciousness of defense counsel, "the special skill and experience of counsel," the "quality of representation," the novelty [and] complexity of the issues," and the "results obtained" are proper only in the "rare" and "exceptional" case. <u>Delaware Valley I</u>, 478 U.S. at 564-65 (internal quotations omitted).  This is not such a case.  No special circumstances exist.  The quantity, effort, and prowess of Defendant's official and unofficial counsel will be taken into consideration in the lodestar calculation.  Therefore, Mr. Arshawsky's request for a "difficult case" fee enhancement will be denied.

Moving to the core of the hourly rate determination, Plaintiff has provided no evidence as to what are the prevailing market rates in New Mexico for lawyers of

13

reasonably comparable skill, experience, and reputation. Defendant contends that the $120-per-hour rate of Mr. Arshawsky's co-counsel, Mr. Cleavinger, is within the range of rates customarily paid in New Mexico. Consequently, it contends this is the rate which should be set for Mr. Arshawsky. However, there is no information in the record regarding Mr. Cleavinger's legal experience or whether attorney fee rates in Tierra Amarilla are equivalent to those charged in Albuquerque. In the alternative, Defendant contends that Mr. Arshawsky's rate should be set no higher than the $180 per hour rate of its co-counsel, Ms. McCarthy Apodaca, who is a New Mexico attorney.[5] Because the experience of Mr. Arshawsky and Ms. McCarthy Apodaca are similar, if not equivalent, and given Mr. Arshawsky's failure to provide evidence of New Mexico market rates, I conclude that a rate of $180 per hour is a reasonable rate for Mr. Arshawsky in this case.

2.   Ms. Pierce

Ms. Pierce is Mr. Arshawsky's legal assistant. Mr. Arshawsky avers that she has more than 25 years of experience. Ms. Pierce's billing rate is $95 per hour. Plaintiff has provided no evidence that this rate is a reasonable New Mexico rate, even after Defendant

---

[5] Plaintiff asked Defendant's co-counsel for their billing rates and hours. Defendant provided in its response the hourly rate for Ms. McCarthy Apodaca. Plaintiff then requested that Defendant provide the hourly rate of its other New Mexico counsel, Mr. McCorkle, and the hourly rates of its out-of-state counsel. Defendant refused unless leave of court was obtained. Plaintiff requests that the Court order Defendant to submit the hourly rate information or that it grant leave to Plaintiff to conduct discovery on these issues. Plaintiff's request is hereby denied. The fee information requested is irrelevant. There is no evidence in the record that Mr. McCorkle and Mr. Arshawsky are similarly situated, such that Mr. McCorkle's hourly rate would be a relevant comparative figure. Not only are the out-of-state counsel Plaintiff refers to "of-counsel," and not counsel of record for Defendant, but as out-of-state attorneys their hourly rates are immaterial to the issue of what a reasonable New Mexico fee is.

contested the rate as high.  Defendant's co-counsel, Ms. McCarthy Apodaca, submitted an affidavit averring that her firm, the Rodey Firm, bills its paralegal services at $50 to $75 per hour.  The Rodey Firm is a New Mexico law firm, and thus its rates provide some evidence of what a reasonable paralegal rate is in New Mexico.  Therefore, based on Ms. Pierce's experience and the limited information before me as to what New Mexico legal assistant or paralegal rates are, I conclude that a reasonable rate for Ms. Pierce is $75 per hour.

## C.    Lodestar Calculation

The lodestar calculation, and amounts due, are as follows:

| | | |
|---|---|---|
| Mr. Arshawsky | $180/hr. x 72.38 hrs (144.75 x 0.50 hrs.) = | $ 13028.40 |
| Ms. Pierce | $75/hour x 9.25 hrs (18.50 x 0.50 hrs.) = | $    693.75 |
| Total Fees | $13722.15 + gross receipts tax of $736.88 (5.37% x $13722.15) = | $ 14459.03 |
| Total Costs | $1593.35 + gross receipts tax ($34.47) = | $   1627.82 |
| Total Award | $14459.03 + $1627.82 = | $ 16086.85 |

**NOW, THEREFORE, IT IS ORDERED** that Plaintiff James Edwards' Initial Memorandum in Support of Plaintiff's Request for Payment of Attorneys' Fees and Costs, filed April 13, 2000 [Doc. No. 39], is hereby GRANTED IN PART.  Plaintiff is hereby awarded the sum of $16086.85 for his attorneys' fees and costs.

15

**IT IS FURTHER ORDERED** that Plaintiff's Itemized Accounting and Declaration in Support of Attorney Fees for David Cleavinger, Esq., filed April 12, 2000 [Doc. No. 36], is hereby DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff James Edwards:  Joseph Arshawsky, YONGDAHL & SADIN, P.C., Albuquerque, N.M., and Daniel Cleavinger, Tierra Amarilla, N.M.

Counsel for Defendant:  Leslie McCarthy Apodaca and Robert G. McCorkle, RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A., Albuquerque, N.M.